HONORABLE RONALD B. LEIGHTON

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

| | |
|---|---|
| AMERICAN COMMERCE INSURANCE COMPANY,<br><br>　　　　　　　　　　　Plaintiff,<br><br>　　v.<br><br>JEFFREY A. STEWART, a single man,<br><br>　　　　　　　　　　　Defendant. | No. 3:10-cv-05240-RBL<br><br>ORDER ON PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT [Dkt. #6] |

## I. Introduction

This matter is before the Court on Plaintiff's Motion for Summary Judgment [Dkt. #6]. Plaintiff American Commerce Insurance Company seeks a declaration that it has no duty to defend or indemnify Defendant Jeffrey Stewart under Stewart's auto insurance policy.

## II. Background

This case and the underlying lawsuit arise out of an automobile accident on May 15, 2008. Stewart's son, Christopher Stewart, struck pedestrians William Lee and Dawn Smith[1] ("Lee and Smith") while driving through 5-Mile Drive in Pt. Defiance Park. Lee and Smith sued both Christopher Stewart and Jeffrey Stewart in state court, alleging extensive damages. They allege Stewart is liable for his son's actions under the family car doctrine.[2]

---

[1] Lee and Smith intervened and responded to American Commerce's Motion. Lee and Smith fully incorporate and join Stewart's Opposition to American Commerce's Motion for Summary Judgment [Dkt. #30].

[2] Under the family car doctrine, a person who maintains or provides a motor vehicle for the use of a member of his or her family is responsible for the acts of that family member in the operation of that motor vehicle. *See Kaynor v. Farline*, 117 Wn. App. 575, 584, 72 P.3d 262 (2003).

ORDER - 1

At the time of the accident, Christopher Stewart was driving a 2005 Subaru WRX sedan. Stewart did not own, license, or use the Subaru. The Subaru is not one of the five vehicles listed on Stewart's American Commerce insurance policy. Apparently, Stewart's ex-wife, Shelly Jo Stewart, provided insurance for the Subaru through Mutual of Enumclaw, and the Subaru was titled under her name. There is dispute as to whether Stewart maintained the vehicle.

American Commerce has been defending Stewart in the underlying Lee and Smith lawsuit under a reservation of rights. It commenced this Declaratory Judgment Action in an effort to establish that it owes no duty to defend or indemnify Stewart because the claims alleged against him are excluded under the policy. Stewart argues that an issue of material fact exists because an exception to the exclusionary language applies if Stewart was "maintaining" the Subaru, and the question of whether Stewart provided any maintenance for the vehicle is an unresolved question of fact in this suit and the underlying state litigation.

### III. Analysis

1. <u>Summary Judgment Standard</u>

Summary judgment is appropriate when, viewing the facts in the light most favorable to the nonmoving party, there is no genuine issue of material fact which would preclude summary judgment as a matter of law. Once the moving party has satisfied its burden, it is entitled to summary judgment if the non-moving party fails to present, by affidavits, depositions, answers to interrogatories, or admissions on file, "specific facts showing that there is a genuine issue for trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986). "The mere existence of a scintilla of evidence in support of the non-moving party's position is not sufficient." *Triton Energy Corp. v. Square D Co.*, 68 F.3d 1216, 1221 (9th Cir. 1995). Factual disputes whose resolution would not affect the outcome of the suit are irrelevant to the consideration of a motion for summary judgment. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). In other words, "summary judgment should be granted where the nonmoving party fails to offer evidence from which a reasonable [fact finder] could return a [decision] in its favor." *Triton Energy*, 68 F.3d at 1220.

2. <u>The Duty to Defend</u>

An insurer has a duty to defend its insured when "a complaint against the insured, construed liberally, alleges facts which could, if proven, impose liability upon the insured within the policy's coverage." *See American Best Food, Inc. v. Alea London, Ltd.*, 168 Wn.2d 398, 404, 229 P.3d 693 (2010). The insurer "must defend until it is clear that the claim is not covered." *Id.* at 405. The insurer is entitled to investigate the facts and to dispute the insured's interpretation of the law, but if a reasonable interpretation of the facts or the law exists that could result in coverage, the insurer must defend. *Id.* When the facts or law affecting coverage are in dispute, the insurer may defend under a reservation of rights until the coverage issue is settled in a declaratory action. *Id.* Likewise, when an insurer is unsure of its obligation to defend in a given instance, it may defend under a reservation of rights while seeking a declaration that it has no duty to defend. *Id.; see also Truck Ins. Exchange v. Vanport Homes, Inc.*, 147 Wn.2d 751, 761, 58 P.3d 276. American Commerce defended Stewart in the underlying lawsuit under a reservation of rights, and it filed this declaratory action as permitted by Washington State law. The question is whether American Commerce, as a matter of law, has no duty to defend Stewart in the underlying state tort lawsuit and has no duty to indemnify Stewart if he is found liable.

Stewart argues that, in order for the court to determine whether American Commerce has a duty to defend or indemnify, it will have to decide questions of fact that are disputed in the underlying state action. Specifically, Stewart argues the court will have to determine whether he maintained the Subaru for his son's use. Stewart's position is at odds with this court's actual function in ruling on a motion for summary judgment. The court cannot and does not make factual determinations; it views the evidence and the inferences to be drawn therefrom in the light most favorable to the non-moving party. The motion for summary judgment can only be granted if a legal determination can be made as a matter of law. If the outcome depends on the resolution of a material issue of fact, summary judgment is not available. In this order, this court cannot and will not make factual findings whether Stewart provided any maintenance for the Subaru; instead, it will view this question in the light most favorable to Stewart.

ORDER - 3

3. <u>The Rules of Interpretation and Construction of an Insurance Contract</u>

The rules and principles governing the court's interpretation of the subject insurance contract are well-settled in Washington State. As with any contract, the court's primary goal is to ascertain the parties' intent. The interpretation of an insurance policy is a question of law, and the policy is construed as a whole with the court giving force and effect to each clause in the policy. *Queen City Farms* v. *Central National Ins. Co.*, 126 Wn.2d 50, 59-60, 882 P.2d 703 (1994); *see also American Star Ins. Co. v. Grice,* 121 Wn.2d 869, 874, 854 P.2d 622 (1993). The language of an insurance policy is to be interpreted in accordance with the way it would be understood by the average person, rather than in a technical sense. *Id.*

If the language in an insurance contract is clear and unambiguous, the court must enforce it as written and may not modify the contract or create ambiguity where none exists. However, if a policy provision on its face is fairly susceptible to two different but reasonable interpretations, the policy is ambiguous and the court must attempt to discern and enforce the contract as the parties intended. To determine the parties' intent, the court first will view the contract as a whole, examining its subject matter and objective, the circumstances of its making, the subsequent conduct of the parties, and the reasonableness of their respective interpretations. If the court determines that the policy remains ambiguous even after its consideration of any extrinsic evidence,[1] the court will apply a meaning and construction most favorable to the insured, even though the insurer may have intended another meaning.

The court must construe the insurance policy as a whole while giving each and every policy provision force, effect, and a fair, reasonable, and sensible construction. Overall, the policy should be given a practical and reasonable interpretation rather than a strained or forced construction that leads to an absurd conclusion, or that renders the policy nonsensical or ineffective. *Transcontinental Ins. Co. v. Washington Public Utilities Districts' Utility System,* 111 Wn.2d 452, 456-457, 760 P.2d 337 (1988) (internal citations omitted).

---

[1] Relevant extrinsic evidence is often unavailable, as where the language at issue was not negotiated by the parties and is instead a part of a standard form policy. *See Queen City Farms*, 126 Wn.2d at 60.

Furthermore, the rule strictly construing ambiguities in favor of the insured applies with added force to exclusionary clauses which seek to limit policy coverage. Exclusions of coverage will not be extended beyond their "clear and unequivocal" meaning. *Lynott v. National Union Fire Ins. Co.*, 123 Wn.2d 678, 690, 871 P.2d 146 (1994). Indeed, where the policy language remains ambiguous even after consideration of extrinsic evidence, the legal effect of such ambiguity is to render the exclusionary language ineffective. *Id.* (*Citing McDonald v. State Farm Fire & Cas. Co.*, 119 Wn.2d 724, 733, 837 P.2d 1000 (1992)).

4. <u>The Policy Language</u>

Stewart's policy states that American Commerce "will pay damages for 'bodily injury' or 'property damage' for which any 'insured' becomes legally responsible because of an auto accident." The policy provides the following relevant definitions:

1) "You" and "Your" refer to the "named insured"…;

2) "Family member" means a person related to you by blood, marriage or adoption who is a resident of your household;

2) "Occupying" means in, upon, getting in, on, out or off;

3) "Your covered auto" means…any vehicle shown in the Declarations; and

4) "Insured" refers to "You or any 'family member' for the ownership, maintenance or use of any auto..." [Dkt. #6, Ex. E].

The policy also contains the following relevant exclusion:

> B.  We do not provide Liability Coverage for the ownership, maintenance or use of:
> …
> 3.  Any vehicle, other than "your covered auto," which is:
>     a.  owned by any "family member;" or
>     b.  furnished or available for the regular use of any "family member."
> However, this Exclusion (B.3.) Does not apply to you while you are maintaining or "occupying" any vehicle which is:
>     a.  owned by a "family member;" or
>     b.  furnished or available for the regular use of a "family member."

ORDER - 5

The policy lists Jeffrey Stewart as the named insured and lists the five vehicles covered under the policy. The Subaru is not listed on the policy.

5. <u>Interpretation of the Policy Language</u>

American Commerce argues that the Subaru is excluded under Exclusion B.3 because the language clearly and unambiguously excludes liability coverage for any vehicle (other than the listed covered autos) that is "furnished or available for the regular use of any family member." Stewart does not appear to contest the application of the first portion of Exclusion B.3. No party has argued that Christopher was not a family member as defined in the policy or that the Subaru was not available for his regular use.

However, Exclusion B.3 also contains an exception, which applies while Stewart is "maintaining or 'occupying' any vehicle which is…furnished or available for the regular use of a 'family member.'" Stewart argues that a question of fact exists because the exception to Exclusion B.3 would apply and he would be entitled to coverage if the underlying court finds that Stewart maintained the Subaru for his son's use. Therefore, the primary issue is the interpretation of "while you are maintaining or 'occupying'" in the context of the exception to Exclusion B.3.

There are two separate ways to interpret the exception to Exclusion B.3. The first interpretation is that the exception applies if Stewart had at any point maintained the Subaru or consistently provided maintenance for the Subaru (for example, periodically filling the tires, checking the oil, making necessary repairs, etc.).

The second interpretation is that "maintaining" is temporal, and the exception applies if the insured was in the process of maintaining the vehicle at the time liability occurred (for example, the insured was filling the tire with air and the tire exploded, causing property damage and the relevant liability). Although two *possible* interpretations exist, the exception is not ambiguous because only the second interpretation is reasonable.

The first interpretation, that Exclusion B.3 applies if Stewart at some point maintained the Subaru for his son, is not reasonable because 1) it contradicts the purpose of Exclusion B.3, and 2) it ignores the temporal language of the exception.

ORDER - 6

The liability coverage provision begins broadly.  It applies to any damages for which the insured becomes responsible as a result of an automobile accident.  Exclusion B.3 narrows the breadth of that statement and prevents an insured from receiving coverage on all household or family cars merely by purchasing a single policy.  *See Grange Ins. Ass'n v. MacKenzie*, 37 Wn. App. 703, 683 P.2d 221 (1984).  The provision states, "We do not provide Liability Coverage for the ownership, maintenance or use of… [a]ny vehicle other than 'your covered auto,' which is…furnished or available for the regular use of any 'family member.'"  After stating that no coverage is provided for the maintenance or use of the vehicle under those circumstances, it would be inconsistent to then create an exception to the exclusion that allows coverage if the insured had ever occupied or maintained the vehicle or periodically occupied or maintained the vehicle.  The exclusion is in place to prevent people from taking advantage of their insurance policy for multiple vehicles, and the exception within the exclusion must be narrower than the exclusion itself.  A more consistent interpretation is that the exception to the exclusion applies if Stewart was in the process of "maintaining" or "occupying" the vehicle at the time of the accident.

Furthermore, the language "while you are maintaining or 'occupying'" the vehicle is clearly temporal.  Although "maintaining" is not explicitly defined, "occupying" is defined as "in, upon, getting in, on, out or off."  None of those phrases indicate that if Stewart at one time occupied the vehicle it would subsequently be insured under his policy.  Such an interpretation would be illogical in light of the context of the provision, which explicitly excludes coverage for any "ownership, maintenance or use" of any vehicle not listed on the policy and regularly used by a family member.  A much more logical interpretation is that Stewart is covered at the time of his occupancy (in, upon, getting in, on, out, or off) of the vehicle.  "Maintaining" is used in the same context as the defined word "occupying," and also follows the word "while."  When "while" is used throughout the policy, it consistently suggests a limitation of time, such as "while towed," "while…being used…in a medical emergency," or "while operating."  Prior or potential future maintenance is irrelevant to the application of the exception to Exclusion B.3 unless the

liability arose *while* the insured was maintaining the vehicle.  The language is clearly temporal within the context of the sentence, Exclusion B.3, and the policy as a whole.

In the underlying complaint, Lee and Smith allege that Stewart is liable under the family car doctrine.  They do not allege that the accident was a result of Stewart's maintenance of the vehicle, or that their injuries arose *while* Stewart was maintaining or occupying the Subaru.  The policy exclusion clearly applies, and the exception to that exclusion clearly does not, even when viewing the facts in the light most favorable to Stewart.

The court cannot ignore the clear and unambiguous interpretation of Stewart's policy, which does not hinge on the disputed fact of whether he maintained the Subaru.  To interpret the policy otherwise would render it nonsensical and ineffective.  American Commerce has no duty to defend or indemnify Stewart in the underlying state court action.

### IV. Conclusion

American Commerce Insurance Company's Motion for Summary Judgment is GRANTED.  American Commerce has no duty to defend or indemnify Jeffrey Stewart in the underlying Lee and Smith state lawsuit under the insurance policy at issue in this case as a matter of law.  This order is not intended to address any other claims or counterclaims in this action.

**IT IS SO ORDERED.**

Dated this 27th day of July, 2010.

                                    _____
                                    RONALD B. LEIGHTON
                                    UNITED STATES DISTRICT JUDGE